UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PIERRE ROY,

                          Plaintiff,              **DECISION AND ORDER**
                                                  15-CV-0283

          v.

BUFFALO PHILHARMONIC
ORCHESTRA SOCIETY, INC.

and

MUSICIANS ASSOCIATION OF BUFFALO,
NEW YORK LOCAL #92,

                          Defendants.

## I. INTRODUCTION

Plaintiff Pierre Roy ("Roy") commenced this proceeding in New York State Supreme Court pursuant to New York Civil Practice Law and Rules ("CPLR") section 7511, seeking to vacate the Decision and Award of Arbitrator Robert J. Rabin, Esq. ("Rabin" or "Arbitrator Rabin"), dated December 1, 2014 ("the Arbitration Decision"). Docket No. 1-2. The proceeding was removed to this Court under its federal question provision pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). The Arbitration Decision was rendered in an arbitration proceeding initiated by Roy's exclusive bargaining representative, Musicians Association of Buffalo, New York, Local No. 92, American Federation of Musicians of the United States and Canada ("the Union") under a collective bargaining agreement between the Union and the Buffalo Philharmonic Orchestra Society, Inc. ("the BPO"), Roy's employer. Docket Nos. 1, 2, 4.   Both the Union and the BPO are named

defendants in this action.    In the Arbitration Decision, Rabin upheld two warning letters given to Roy as well as his termination from the BPO for just cause. Docket No. 8-1.

Roy's Motion to Vacate the Arbitration Award contends that Arbitrator Rabin failed to admit pertinent evidence, failed to evaluate and analyze the evidence proffered by Roy, failed to arrive at a rational and reasoned conclusion consistent with the evidence, and made findings beyond the scope of his contractual authority to adjudicate. Docket No. 8, ¶ 43. Roy further asserts that Arbitrator Rabin committed misconduct in permitting certain evidence, that the Arbitration Decision is against public policy, and that the decision was procured through the false and fraudulent testimony of BPO witnesses. Docket No. 8-12 at 1.[1]

With regard to Defendant Union, Roy argues that the Union breached its duty of fair representation by failing to properly object to evidence, failing to address the corruption and misconduct of certain BPO witnesses, and failing to address public policy concerns related to the nature of Roy's employment. Id.  at 10-11.

Now before the Court are Roy's Motion to Vacate the Arbitration Award (Docket No. 9) and the Defendants' Motions to Confirm the Arbitration Award (Docket Nos. 18, 19).

---

[1] Due to the somewhat duplicative briefings in this case, the Court refers to the documents by item number of the Electronic Court Filing ("ECF") system, with specific reference to the documents' internal page numbers.

## II. BACKGROUND

Familiarity of the facts by the parties is presumed based on the extensive arbitration proceedings and comprehensive briefing in this matter.

Roy was employed by the BPO as principal oboist, a position that was within a bargaining unit represented by the Union. The terms of Roy's employment were governed by a collective bargaining agreement between the Union and the BPO. In July 2012, the BPO discharged Roy for his ongoing intimidating, abusive and disruptive behavior directed toward his colleagues and management. Among other things, witnesses from the BPO alleged numerous instances in which Roy: deliberately played off-tempo or off-pitch during rehearsal in order to "sabotage" the other musicians; engaged in physical and verbal confrontations with the other musicians that were viewed as threatening or intimidating; mocked and mimicked others during rehearsal and made exaggerated gestures so as to distract them from playing; defiantly questioned the maestro's direction on more than one occasion; and made off-color remarks to his colleagues that were perceived as insensitive or offensive.[2] Docket No. 8-1.

Roy received two written warnings for his behavior between his reinstatement in January 2011 and the July 2012 termination of his employment. Roy grieved the written warnings and the July 2012

---

[2] It is important to note that Roy had previously been discharged for similar behavior, but was reinstated under a settlement agreement. Rabin discussed these events for purposes of context, but made clear that the case before him involved only the alleged incidents occurring after January, 2011.

discharge, and the Union pursued the matter to arbitration before Rabin under the collective bargaining agreement.

The arbitration hearing, at which both the Union and the BPO were represented by counsel, was held for a total of 13 days over the course of approximately one year. Rabin afforded the parties full and equal opportunity to offer testimony under oath, cross-examine witnesses, and present evidence and arguments. Roy was present and gave testimony, as did other witnesses. The proof covered the period between his reinstatement in 2011 and the summer of 2012, which revealed that Roy had a series of confrontations and contentious interactions with his orchestra colleagues and fellow performers. In addition, some of the witnesses alleged that Roy had mocked, mimicked, and otherwise distracted musicians playing within close proximity to him, and that he had sabotaged rehearsals by intentionally playing poorly.

Rabin concluded that the evidence supported the two warning letters issued to Roy and held that the BPO's discharge of Roy should stand. Arbitrator Rabin noted further that "even if there were sufficient mitigating circumstances, reinstatement [was] not an acceptable option." Docket No. 8-1 at 42. But, he concluded that monetary relief was appropriate based on his conclusion that the BPO could have done more to give Roy an opportunity to succeed after returning to work following his discharge in 2010. Id. at 46. The 48-page Arbitration Decision upheld Roy's termination and directed that the BPO afford Roy the opportunity to resign in

-4-

addition to a separation package of one year's compensation. <u>Id.</u> at 47.

### III. DISCUSSION

**A.    <u>Preliminary Issues</u>**

Following removal to this Court, Defendant BPO moved to dismiss Roy's original Petition (Docket No. 1) based on lack of standing to bring an action to vacate the arbitral award because the Union, not Roy, was party to the arbitration proceedings. Docket No. 5 at 4-5. In response, Roy filed an Amended Petition, re-asserting his petition to vacate the arbitral award, and also alleging that the Union had breached its duty of fair representation in violation of Section 301 of the LRMA. Docket No. 8, ¶¶ 13, 30-38. The Amended Petition is now the operative pleading. It has been docketed as, and is referred to herein, as Roy's "Motion to Vacate the Arbitration Award." All previous motions brought by the parties in response to Roy's original Petition (Docket No. 1) are therefore superceded.

Defendants BPO and the Union both move to dismiss Roy's action pursuant to Fed. R. Civ. P. 12(b)(6). Docket Nos. 18, 19. Roy has filed opposition papers to those motions, <u>see</u> Docket Nos. 28, 29, to which both Defendants have submitted replies. Docket Nos. 32, 33.

Defendants BPO and the Union have also separately opposed Roy's Motion to Vacate the Arbitration Award addressing the

standards set forth in the Federal Arbitration Act ("FAA"). Docket Nos. 25, 26.

In light of the procedural posture of this case, and in the interest of judicial economy, the Court treats the pending Motions to Dismiss as Motions to Confirm the Arbitration Award. <u>See</u> <u>Sanluis Developments, LLC v. CCP Sanluis, LLC</u>, 556 F. Supp.2d 329, 332 (S.D.N.Y. 2008) ("When a party moves to dismiss a motion to vacate an arbitration award, the court may, *sua sponte*, treat the motion to dismiss as a motion to confirm the award."). Prior to deciding the parties' cross-motions to vacate and confirm the award, the Court briefly addresses Roy's contention that the Union breached its duty of fair representation in the arbitration proceedings.[3] Docket No. 8-21 at 10-12.

## B.  **Duty of Fair Representation**

To establish standing to challenge the arbitration award, Roy now alleges that the Union breached its duty to fairly represent him in the proceedings before Rabin. In asserting this claim, Roy alleges that: (1) the Union inadequately represented him in the grievance and arbitration procedure; (2) the Union failed to properly cross-examine BPO witnesses, introduce evidence, and failed to object to evidence regarding his musical competence; and (3) the Union failed to advance arguments regarding the introduction of tape-recorded meetings, corruption and misconduct

---

[3] Because the Court decides this case on the merits of Roy's Motion Vacate the Arbitration Award, it need not reach the issues of timeliness (Docket Nos. 19-1 at 5-6), and defective service (Docket No. 18-4 at 5-8).

on behalf of the BPO musicians, and public policy concerns. Docket No. 8, ¶¶ 34-37.

"[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." Marquez v. Screen Actors Guild, 525 U.S. 33, 45 (1998). There must also be "a causal connection between the union's wrongful conduct and [plaintiff's] injuries." Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010) (quotations omitted).  "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." White v. White Rose Food, 237 F.3d 174, 179 (2d Cir. 2001) (quotation omitted). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." Marquez, 525 U.S. at 45-46. "[M]ere negligence, even in the enforcement of a collective-bargaining agreement" does not establish a breach of the duty of fair representation. United Steelworkers of Am. v. Rawson, 495 U.S. 362, 372 (1990).

Moreover, "[a] showing of bad faith requires a showing of fraudulent, deceitful, or dishonest action," White, 237 F.3d at 179, and that the union acted "with an improper intent, purpose, or motive," Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998). "A union's acts are discriminatory when substantial evidence indicates that it engaged in discrimination that was

-7-

intentional, severe, and unrelated to legitimate union objectives." Vaughn, 604 F.3d at 709 (quotations omitted).

Roy's allegations that the Union inadequately represented him in the arbitration proceedings, at most, suggest only that the Union was negligent or made "tactical" errors. This is insufficient to state a claim for breach of the duty of fair representation. See, e.g., Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43-44 (2d Cir. 1989). His complaints regarding inadequate cross-examination, failing to raise certain objections or introduce evidence or arguments are all allegations that fail to state a claim of breach of fair representation. See Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., 05cv2666, 2005 WL 1661093, at *1, *7 (E.D.N.Y. July 14, 2005) (noting "[t]he enormous burden" on a plaintiff to establish that a union breached its duty of fair representation and finding no such breach where plaintiff alleged that union denied her additional non-union counsel, failed to prepare the case, and failed to call certain witnesses).

To defeat the Union's motion, Roy must "set forth concrete specific facts from which one can infer [the] union's hostility, discrimination, bad faith, dishonesty, or arbitrary exercise of discretion." Lapir v. Maimonides Medical Ctr., 750 F.Supp. 1171, 1177 (E.D.N.Y. 1990) (citation and internal quotation marks omitted); see Spielmann v. Anchor Motor Freight, Inc., 551 F.Supp. 817, 822 (S.D.N.Y. 1982). Roy states only, in conclusory terms, that all of the above-mentioned conduct was motivated by bad faith.

Docket No. 8-21at 10-12. This is plainly insufficient. <u>See</u> <u>Haque</u> <u>v. United Paperworkers Int'l Union</u>, 949 F. Supp. 979, 987 (N.D.N.Y. 1996) (conclusory allegations of arbitrariness and bad faith fail to state a valid claim).

Here, none of Roy's allegations are supported by any facts indicating a motivation of bad faith or hostility.  Roy's sole attempt to evidence "bad faith" relies on the Union's request for Roy "pay substantial attorney's fees for the arbitration" as the legal fees  increased as the arbitration proceeding progressed over the course of one year. Docket No. 8-21 at 10-11.  According to Roy, after his refusal to contribute to the Union's legal fees, they abandoned his interests and did not fully support his position. <u>Id.</u> at 22. The record belies this claim. In particular, the Arbitration Decision demonstrates that the Union argued vigorously against Roy's termination at all stages of the proceedings, and submitted an extensive post-hearing memorandum well after Roy denied the Union's request for him to contribute to the cost of arbitration. Docket No. 18-2.

Roy may disagree with this finding and the outcome of the arbitration, but that alone is not an adequate ground for a claim against the Union. <u>Barr</u>, 868 F.2d at 43. Because Roy's motion fails to state a plausible claim that the Union breached its duty of fair representation, this claim must be dismissed.

**C.**   **Cross-motions to Vacate / Confirm the Arbitration Award**

The heart of this matter is Roy's request to Vacate the Arbitration Award on the grounds that Rabin engaged in misconduct in refusing to hear pertinent evidence and permitting evidence on musical performance; that the witnesses engaged in corruption and misconduct, and that the decision and award were against public policy. Docket No. 8-21 at 10-21.

For the following reasons, the Court finds that Roy has not set forth a sufficient basis to set aside the award.

**1.**   **Standard of Review**

Judicial review of arbitration awards is "very limited." Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp., 103 F.3d 9, 12 (2d Cir. 1997) (internal quotation marks omitted). The Federal Arbitration Act provides that a district court may vacate an arbitration award "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators . . . ;(3) where the arbitrators were guilty of misconduct . . . or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). Misconduct warranting *vacatur* pursuant to section 10(a) of

the FAA must be serious; it "must amount to a denial of fundamental fairness of the arbitration proceeding." <u>Areca, Inc. v. Oppenheimer & Co., Inc.</u>, 960 F.Supp. 52, 54-55 (S.D.N.Y. 1997) (citations omitted). To prove evident partiality of the arbitration panel, a party must demonstrate "more than just the 'appearance of bias.'" <u>Id.</u> at 56 (citations omitted).

A court may also vacate an award rendered "in manifest disregard of the law." <u>Schwartz v. Merrill Lynch & Co., Inc.</u>, 665 F.3d 444, 451-52 (2d Cir. 2011) (internal quotation marks omitted). The "manifest disregard" test is rigorous. It requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." <u>Siegel v. Titan Indus. Corp.</u>, 779 F.2d 891, 892 (2d Cir. 1985).


### 2.   Refusal to Hear Pertinent Evidence

Roy asserts that Rabin should have accepted a recording and transcript of two separate meetings between Roy and two members of BPO management (Daniel Hart, Executive Director, and JoAnn Falletta, Music Director) in the fall of 2011.[4] Docket No. 8-21 at 12-14. At the arbitration proceeding, the Union attorney offered the recording and transcript, which contained comments made by Falletta regarding Roy's "musicianship." Docket No. 29-4 at 1254-57. According to Roy, those comments differed from Falletta's

---

[4] Roy had begun recording his meetings with BPO personnel after his reinstatement from his "initial firing," and transcribed the recordings with assistance from his wife. Docket No. 29-4 at 1250-52.

testimony and would have called into question her credibility, and therefore should have been admitted. Docket No. 8-21 at 12-13. Rabin reserved his decision on admitting the evidence, which the Union's attorney ultimately chose not to re-offer. Docket No. 29-4 at 1255-61; Docket No. 18-4 at 12.

With regard to the admissibility of evidence:

> [Section 10(a)(3)] has been narrowly construed so as not to impinge on the broad discretion afforded to arbitrators to decide what evidence should be presented. Every refusal to hear potentially relevant evidence does not create grounds for vacating an arbitration award. Though an arbitrator must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments, he is not required to hear all the evidence proffered by a party. Arbitrators must be given discretion to determine whether additional evidence is necessary or would simply prolong the proceedings.

Rai v. Barclays Capital Inc., 739 F. Supp. 2d 364, 371-72 (S.D.N.Y. 2010) aff'd, 456 Fed. Appx. 8 (2d Cir. 2011) (internal citations and quotations omitted).

The Union's counsel opted, as a matter of strategy, not to re-offer the recording and transcript, see Docket No. 18-4, therefore Rabin did not "refuse" the evidence in question. Even assuming that Rabin had excluded the recording and transcript, Roy cannot show that the exclusion deprived him of a fundamentally fair arbitration process. See In re Interdigital Comm. Corp., 528 F.Supp.2d 340, 351 (S.D.N.Y. 2007).

By way of example, Roy takes issue with a particular comment made by Falletta with regard to the fall 2011 meeting, that Roy

allegedly stated he was only paid to "play the ink" in an apparent
defiant response to her request for him to re-tune. Docket No. 28-3
at 11. Roy alleges that the taped conversation would reveal that
Falletta's characterization of the comment was inaccurate, and that
he had actually said that he'd always played "beyond the ink,"
i.e., went above and beyond his musical duties. Id. Rabin, in
reviewing the testimony of both Roy and Falletta, addressed the
"ink" remark discrepancy and made clear: "It is impossible for me,
or anyone who was not in the room with Mr. Roy and Ms. Falletta, to
say with certainty which version of the 'play the ink' remark was
actually uttered. For me, the significance of this event is that
Maestro Falletta had real concerns about Mr. Roy's commitment to
full involvement in performance." Id. at 11-12. In his own words,
Rabin neither credited or discredited the testimony of either
witness, rendering Roy's present challenge to Falletta's
credibility unpersuasive as Rabin did not consider the remark as a
factor in reaching his determination. Stated another way,  any
further elaboration on the "ink" would not assist Roy because, even
if his version of the conversation were true and the recording and
transcript so proved, Roy cannot show that any prejudice resulted
from the excluded evidence because it did not factor into Rabin's
final decision. See Areca, 960 F.Supp. at 55 ("[I]f the arbitrator
refuses to hear pertinent and material evidence to the prejudice of
one of the parties, the arbitration award may be set aside . . . .
However, the misconduct must amount to a denial of fundamental

fairness of the arbitration proceeding to warrant vacating the award.").

Roy has not set forth a colorable ground on which to base a claim of arbitrator misconduct pursuant to 9 U.S.C. § 10(a)(3).

### 2.   **Excess of Power**

Roy alleges, under § 10(a)(4), that Arbitrator Rabin exceeded his powers in upholding his termination because the collective bargaining agreement provided that issues of musical incompetence were not arbitrable. Docket No. 8-21 at 14.

The inquiry under § 10(a)(4) is limited, focusing on "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997)) (citation omitted). Here, however, it is clear from the face of the decision that Rabin did not implicate the provision of the collective bargaining agreement prohibiting arbitration "invoked for non-renewal matters based upon alleged musical incompetence." Docket No. 8-18 at 37.

The gravamen of Roy's termination were his anger issues that had become increasingly more troubling after his reinstatement in early 2011. Docket 8-1 at 41. Rabin specifically noted Roy's aggressive behavior with multiple BPO musicians and his poor inter-personal relationships with BPO administration. Id. at 42. The only mention of musical incompetence was in connection with Roy's

alleged hostility towards his colleagues, who claimed Roy repeatedly and intentionally played below his skill level to create difficulty for his fellow orchestra members. Id. at 37-39. In the Arbitration Decision, Rabin explicitly stated that "at no point . . . does the [BPO] question Mr. Roy's overall musicianship, *except as entailed in the specific incidents that I discuss, as part of its claim of deliberately poor playing*." Id. at 12 (emphasis added).

Arbitrator Rabin did not exceed his authority by discussing the instances of alleged "musical sabotage" in connection with the BPO's termination of Roy in the arbitration proceeding. Accordingly, his challenge to the arbitral award on this basis must fail.

### 3.   Corruption and Misconduct of Witnesses

Roy next avers that the BPO advanced a number of allegations that were petty and trivial, which amounted to nothing more than a "grudge" against him for being allowed to return to the orchestra after his 2011 termination. Docket No. 8-21 at 16.

Section 10(a)(1) of the FAA provides that an arbitral award may be set aside where it was procured by corruption, fraud, or undue means.  "[A]n arbitration award obtained by perjured testimony may be vacated under 9 U.S.C. § 10(a), which authorizes a court to vacate an award "procured by fraud." Wexelman v. Dean Witter Reynolds, Inc., No. 84 CIV. 6791, 1985 WL 368, at *2 (S.D.N.Y. Mar. 1, 1985).

In order for an award to be vacated on this ground . . . (1) the perjury must be established by clear and convincing evidence; (2) petitioner must establish that the allegedly perjured testimony materially related to an issue in the arbitration and was credited by the arbitrator, thus depriving him of a fair hearing; and (3) it must be shown that the fraud could not have been discovered upon the exercise of due diligence prior to or during the arbitration.

Red Apple Supermakerts/Supermarkets Acquisitions v. Local 338, No. 98 CV. 2303, 1999 WL 596273, at *6 (S.D.N.Y. Aug. 9, 1999).

Fatal to Roy's claim is that he has not raised any issue of witness misconduct beyond the expected conflicting testimony in the arbitration hearing. Even assuming that the BPO witnesses perjured themselves, the testimony at that time was discoverable and challengeable at the time of the hearing. It cannot be said that Roy did not have the opportunity to present to Arbitrator Rabin evidence of the alleged fraudulent behavior by the BPO. "The purpose of requiring fraud to be 'newly discovered' before vacating an arbitration award on that ground is 'to avoid reexamination, by the courts, of credibility matters which either could have been or were in fact called into question during the course of the arbitration proceedings.'" Hakala v. Deutsche Bank AG, No. 01 CIV. 3366(MGC), 2004 WL 1057788, at *3 (S.D.N.Y. May 11, 2004) (quoting A. Halcoussis Shipping Ltd. v. Golden Eagle Liberia Ltd., 88 Civ. 4500, 1989 WL 115941, at *3 (S.D.N.Y. Sept. 27, 1989)). Arbitrator Rabin, as the finder of fact, had the opportunity to assess the credibility of both the BPO and Union witnesses and revisiting this

issue is not properly before the Court. <u>See</u> <u>Karppinen v. Karl</u>
<u>Kiefer Mach. Co.</u>, 187 F.2d 32, 35 (2d Cir. 1951) ("We note only in
passing that if perjury is 'fraud' within the meaning of the
statute, then, since it necessarily raises issues of credibility
which have already been before the arbitrators once, the party
relying on it must first show that he could not have discovered it
during the arbitration, else he should have invoked it as a defense
at that time.").

Underlying Roy's allegation of fraud is his belief that Rabin
gave "unfair weight" to the testimony of the musicians who alleged
that Roy mocked, mimicked, confronted, or otherwise behaved
inappropriately in their workplace. Docket No. 8-21 at 18-19.

Arbitrator Rabin evaluated testimony from several witnesses,
some of whom made the allegations of impropriety against Roy and
others who witnessed no misbehavior and had good working
relationships with Roy. Docket No. 8-1. He noted that while "many
of the musicians who testified for the BPO were sympathetic to
Mr. Roy," there was also "abundant and consistent testimony about
Mr. Roy's playing issues [his instrument]," as well as "consistent
and cumulative observations of physical actions that demonstrated
anger." <u>Id.</u> at 37-39. Ultimately, Rabin found "the core of this
rather large body of corroborative testimony an accurate and
truthful account of what actually occurred." <u>Id.</u> at 39. In support
of his conclusion, Rabin devoted an extensive explanation
discussing "the motivation of the witnesses" in reaching his

decision. His evaluation of the evidence is entitled to deference, and to the extent Roy is merely re-hashing Rabin's treatment of the testimony, such an argument must fail. See Data & Development, Inc. v. InfoKall, Inc., 513 Fed. Appx. 117, 118 (2d Cir. 2013) ("[A]n arbitration award may not be vacated because of disagreement with the arbitrator's evaluation of the evidence."); Fairchild Corp. v. Alcoa, Inc., 510 F.Supp.2d 280, 286 (S.D.N.Y. 2007) (arbitrators are afforded broad discretion to determine whether to hear or not hear evidence, or whether additional evidence is necessary or would simply prolong the proceedings).

Rabin carefully analyzed and discussed the evidence before him and delivered a thorough, well-reasoned and balanced 48-page decision. Despite his finding that Roy's conduct warranted termination, he nonetheless provided that Roy would be entitled to one year's compensation if he were to voluntarily resign from his employment. Docket No. 8-1 at 46. In pertinent part, the Arbitration Award states:

> [T]here is no way that Mr. Roy may be restored to his position with the BPO . . . . He was on notice from the 2011 settlement agreement and from the letter of reinstatement that he had to control certain behavior . . . . He engaged in unacceptable conduct that made it difficult for the musicians around him to do their job. His return would cause unacceptable anxiety. However, I have the authority to address the concerns raised by the Union through a monetary award.
> . . . .
>
> An award of a year's pay appropriately balances the equities and responsibilities in this case . . . and serves as a form of

> severance pay . . . .  A resignation would
> give Mr. Roy a dignified way to terminate his
> affiliation with the BPO.

Id. at 45. Rabin further clarified that Roy would receive the compensation package whether he took the option to resign or not. Id. at 47.

That alternative is still available to Roy provided he tenders a voluntary termination from his position. That result would be equitable and in keeping with Rabin's findings.

In sum, Rabin reached a fair and just result while affording both sides ample opportunity to present their testimony and arguments. However, to the extent that Roy is simply seeking a de novo review of the Arbitration Decision, such relief is not available here. Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) ("A motion to vacate filed in federal court is not an occasion for de novo review of an arbitral award.").

As Roy fails to state a claim of "fraud" under 9 U.S.C. § 10(a)(1), his motion to vacate should be denied.

### 4.   Public Policy

Roy concludes his motion in asserting that the arbitration award upholding his termination from the BPO violated public policy because his profession as an oboist is extremely limited in terms of job opportunities. Docket No. 8-21 at 20. According to Roy, he has unsuccessfully sought new employment and, despite his impressive credentials, he has been unable to secure a permanent

position. Id. He believes, therefore, his career as a professional musician has come to a halt.

In order to set aside an arbitration award on the basis of public policy, the public policy must be "well defined and dominant," and must be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 452 (2d Cir. 2011) (quoting United Paperworkers Int'l Union v. Misco, Inc., 84 U.S. 29, 43 (1987) (internal quotations omitted)).

Roy has failed to identify an explicit public policy that is well-defined or recognized, much less demonstrate how enforcing the arbitral award would conflict with such public policy. See Banco de Seguros Del Estado v. Mut. Marine Offices, Inc., 230 F. Supp. 2d 427, 430 (S.D.N.Y. 2002), aff'd sub nom. Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255 (2d Cir. 2003). Nor is the Court aware of any public policy that protects an employee with limited job prospects (in this case, a professional orchestral musician), from discharge for just cause.

Although Roy's current circumstances are unfortunate, he sets forth no grounds, statutory or otherwise, to set aside the arbitration award.

## IV. CONCLUSION

**IT HEREBY IS ORDERED**, that Roy's Motion to Vacate the Arbitration award (Docket No. 8) is **DENIED** and the Cross-Motions of the BPO and the Union to Confirm the Award (Docket Nos. 18, 19) are

**GRANTED**. In light of the Court's determination, the BPO's earlier Motion to Dismiss (Docket No. 5) is **DENIED**.

The Clerk of the Court is directed to close this case.

SO ORDERED.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED: February 9, 2016